THE MERCHANTS' NATIONAL BANK OF KANSAS CITY v. LOVITT, *Appellant.*

Division One, March 13, 1893.

1. **Principal and Agent:** NOTICE: AGENT ACTING FOR HIMSELF. While it is a general rule that notice of facts acquired by an agent, while transacting his principal's business, is notice to the latter, whether communicated by the agent to his principal or not, and the

rule applies to banking and other corporations as well as to individuals, yet the reason of the rule ceases when the agent is acting for himself and not his principal and the rule itself does not apply in such a case.

2. ——: ——: OFFICER OF CORPORATION. When an officer of a corporation is dealing with it in his individual interest, the corporation is not chargeable with his uncommunicated knowledge of facts derogatory to his title to the property which is the subject of the transaction.

3. ——: ——: ——. Where a note was made to the vice-president of a bank in his individual capacity, in consideration of shares of stock in a corporation which was to be formed, but never was formed, which note he discounted at his bank and had the proceeds placed to his credit, none of the other officers of the bank having any knowledge of the facts regarding the consideration of the note, the bank will not be chargeable with notice of such facts affecting its title.

4. ——: ——: ——. The president of the bank, in such case, having agreed to take the note, and the bank having accepted the discount as figured by the vice-president, it is immaterial that the latter may, in the first instance, have fixed the rate of discount.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*Beebe & Watson* for appellant.

(1) The sole question in this case is whether Dickinson's knowledge of the contemporaneous contract, showing for what the note was given, can be imputed to the bank. (2) Dickinson acted for the bank when he fixed the rate of discount (a material matter) and attended to the necessary preliminaries. When so acting his knowledge was that of the bank. He had a right to act for the bank by virtue of his office; but it appears that the business of arranging the matter of discount, etc., was left to him by the president. There can be no doubt in view of the undisputed testimony that the bank thus had notice of the contemporaneous contract.

Morse on Banking [3 Ed.] sec. 136, and cases cited. If the bank had notice of the terms of the contemporaneous contract it knew that the consideration of the note was executory, and received it charged with that knowledge, and cannot be said to be a *"bona fide* purchaser.*"*   (3) The first point made by respondent, that "Dickinson's knowledge having been acquired in the transaction of his own private business cannot be imputed to the bank," is met by the cases of *Chouteau v. Allen*, 70 Mo. 341; *Blumenthal v. Brainerd*, 38 Vt. 402; *Hart v. Bank*, 33 Vt. 252; *Hovey v. Blanchard*, 13 N. H. 145; *Patten v. Ins. Co.*, 40 N. H. 375; *Mullen v. Ins. Co.*, 58 Vt. 113; *Bank v. Hollenbeck*, 29 Minn. 322; *Fuller v. Atwood*, 14 R. I. 293, and cases cited; 1 American & English Cyclopedia of Law, p. 423.   (4) *First*. In all the cases cited by respondent to show that Dickinson had an interest adverse to the bank and that it is not to be presumed that he communicated his knowledge as to the consideration of the note to the bank, the agents of the banks had been guilty of some fraud or misconduct, the disclosure of which would necessarily have prevented the bank from discounting the paper.   It is not so in the present case. *Second*. But suppose at the time Dickinson spoke to President Clark he had an adverse interest, the case yet falls within the class of cases cited in Morse on Banking [3 Ed.] p. 231, par. 109.   (5) There is no escape from the proposition that Dickinson acted for the bank in a matter requiring discretion.

*Gage, Ladd & Small* for respondent.

(1) Dickinson's knowledge having been acquired in the transaction of his own private business cannot be imputed to the bank.   *Bank v. Schaumburg,* 38 Mo. 228; *Johnston v. Shortridge*, 93 Mo. 232; *Savings Ass'n*

v. *Printing Co.*, 25 Mo. App. 642; *Brass Co. v. Co.*, 37 Mo. App. 155; 1 Waterman on Corporations, sec. 135, p. 470; *Houseman v. Mut. Ben. Ass'n*, 81 Pa. St. 256; *Reid v. Bank*, 70 Ala. 211; *Bank v. Savery*, 18 Hun, 40; s. c. 82 N. Y. 307; *Bank v. Clark*, 64 Hun, 175; *Bank v. Neass*, 5 Denio, 329; Taylor on Private Corporations [2 Ed.] sec. 210; *Bank v. Cornen*, 37 N. Y. 320; *Bank v. Christopher*, 40 N. J. Law, 435; *Ins. Co. v. Shriver*, 3 Md. Ch. Dec. 381; *Terrell v. Bank*, 12 Ala. 502; *Ins. Co. v. Co.*, 22 Barb. 468. (2) Even if a corporation can be charged with the knowledge of one of its officers, acquired by him in the management of his own private business, the knowledge of Dickinson cannot be imputed to plaintiff in the case at bar, because, in the matter of the discount of the note, Dickinson's interests were adverse to those of the plaintiff. *Johnston v. Shortridge*, 93 Mo. 227; *Innerarity v. Bank*, 139 Mass. 332; *Wickersham v. Zinc Co.*, 18 Kan. 481; *In re European Bank*, L. R. 5 Ch. App. Cas. 358; *In re Railway*, L. R. 7 Ch. App. Cas. 161; *Barnes v. Gas Light Co.*, 27 N. J. Eq. 33; *Bank v. Christopher*, 40 N. J. Law, 435; *Winchester v. Railroad*, 4 Md. 231; *Frenkel v. Hudson*, 82 Ala. 158; *Bank v. Lewis*, 22 Pick. 24; *Ins. Co. v. Bell*, 22 Barb. 54. (3) The doctrine of constructive knowledge is founded solely upon the presumption that the agent will perform his duty and communicate his own knowledge to his principal. But, where such communication would defeat the agent's own purposes, or disclose his own fraud or misconduct, the presumption does not obtain and the principal is not charged with the knowledge of the agent. *In re Bank*, L. R. 5 Ch. App. Cas. 358; *Hummell v. Bank*, 75 Iowa, 689; *Barnes v. Gas Light Co.*, 27 N. J. Eq. 33; *Terrell v. Bank*, 12 Ala. 502; *Dillaway v. Butler*, 135 Mass. 479; *Frenkel v. Hudson*, 82 Ala. 158; *Cave v. Cave*, L. R. 15 Ch. Div. 639. (4) As a matter of fact,

Dickinson did not in the discount of the note act as agent of the bank; as matter of law he could not, in such sense that his knowledge would be imputed to the bank. *Johnston v. Shortridge*, 93 Mo. 227; *In re Bank*, L. R. 5 Ch. App. Cas. 358; *Bank v. Gifford*, 47 Iowa, 575; *Hummell v. Bank*, 75 Iowa, 689; *Peckham v. Hendren*, 76 Ind. 54; *Bank v. Neass*, 5 Denio, 337; *Terrell v. Bank*, 12 Ala. 502; *Innerarity v. Bank*, 139 Mass. 332.

BLACK, P. J.—This is an action on a negotiable promissory note for $2,900, executed by the defendant Lovitt and payable to O. P. Dickinson in four months after date, with interest from date at the rate of eight per cent. per annum, and by Dickinson indorsed and delivered to the plaintiff bank. The defense set up by Lovitt, the maker of the note, is a failure of consideration.

The history of the transaction is this: On the twenty-seventh of January, 1888, Dickinson, the payee of the note in suit. by an agreement in writing sold to Lovitt fifty-five shares of stock in a corporation then about to be formed for which Lovitt gave his note of that date for $2,900 due in six months. It was understood between Lovitt and Dickinson before this note became due that it was to be renewed. On July 11, 1888, Lovitt executed the note sued upon, dating it the twenty-seventh of that month, and gave it to Dickinson in renewal of the former one, and Dickinson indorsed it to the bank on the same day. Lovitt paid the interest accrued on the original note.

For the purposes of the trial only, it was agreed "that the note sued upon was given for a contract in which the payee of the note agreed to sell certain shares of stock which then had no existence and deliver the same when the corporation was formed and stock certificates issued; that the corporation never was formed

and the stock certificates never issued, and that there was a complete failure of consideration of the note; that said Dickinson, the payee of the note, having made the contract set forth in defendant's answer, at all times from and after the making of the same up to the present time knew of its existence and terms."

W. B. Clark was president, Mr. McKnight cashier and Dickinson vice-president of the plaintiff bank when the bank acquired the note sued upon. They were all active officers, and Dickinson was also a director. Dickinson had a conversation with Clark, the president, in which he said he had or expected to get the note of Lovitt. He then asked Clark whether the bank would take it and Clark agreed to discount the note. The evidence leaves it in doubt whether this conversation occurred after, or a day or two before the note in suit was executed; but it clearly appears that Clark as president agreed to take the note. The note was executed on the eleventh of July, and on that day Dickinson indorsed and delivered it to the bank. He at the same time figured up the discount on a deposit slip and handed the slip to the discount clerk or to the cashier who passed it to the clerk. The discount clerk made the proper entries, placing the amount of the note less $10.30 to the credit of Dickinson who checked out and used the money. Lovitt was a well known customer of the bank and had a line of credit thereat.

Dickinson in his evidence says he did not accept the note for the bank, but that Clark did. Clark testified that he agreed with Dickinson to take the note for the bank, but that he left the details of the arrangement to Dickinson, that is to say, to make the entries, receive the paper and deduct the proper amount of interest for the bank. The $10.30 deducted represented the interest from the eleventh of July to the twenty-seventh, the latter being the post-date of the note.

The officers of the bank, except Dickinson, knew nothing about the contract between Dickinson and defendant, and the bank had nothing whatever to do with the original note.

The defendant asked the court to declare the law to be that the knowledge of the vice-president of the existence and nature of the agreement constituting the consideration of the note in suit, was the knowledge of the bank, which request the court refused, and this presents the only question for our consideration.

It is a general rule that notice of a fact acquired by an agent while transacting the business of his principal is notice to the principal, and this rule applies to banking and other corporations as well as to individuals. It is the duty of the agent to communicate to the principal information thus acquired, which would affect the rights of the principal; and the presumption is that the agent has performed his duty in this behalf. If he has not, still the principal should be charged with notice of the existence of such facts thus coming to the knowledge of the agent, because he selects his own agent and confides to him the particular business. Story on Agency, sec. 140. But the reason of the rule ceases when the agent acts for himself and not his principal, and the rule itself ought not to apply in such a case. Accordingly it has been held by this court that knowledge of an unrecorded deed acquired by officers of a corporation, while acting for themselves and not for the corporation, will not be imputed to the corporation. *Johnston v. Shortridge*, 93 Mo. 227.

An officer of a banking corporation has a perfect right to transact his own business at the bank of which he is an officer, and in such a transaction his interest is adverse to the bank, and he represents himself and not the bank. The law is well settled that, when an officer of a corporation is dealing with it in his indi-

vidual interest, the corporation is not chargeable with his uncommunicated knowledge of facts derogatory to his title to the property which is the subject of the transaction. Taylor on Corporations [2 Ed.] sec. 210; 1 Waterman on Corporations, sec. 135; *Frenkel v. Hudson*, 82 Ala. 158; *Wickersham v. Zinc Co.*, 18 Kan. 481; *Barnes v. Gas Light Co.*, 27 N. J. Eq. 33; *Innerarity v. Bank*, 139 Mass. 332.

In the case last cited, the court, after speaking of the general rule that knowledge of the agent will be imputed to the principal, says: "But this principle can have no application where the director of the bank is the party himself contracting with it. In such case the position he assumes conflicts entirely with the idea that he represents the interest of the bank. * * * A director offering a note, of which he is the owner, for discount, or proposing for a loan of money on collateral security alleged to be his own property, stands as a stranger to it."

Now, the facts set up to defeat a recovery here are the facts constituting the transaction between Dickinson and the defendant, in which Dickinson did not represent or profess to represent the bank, and with which the bank had nothing whatever to do. Again, Dickinson in offering the note to the bank for discount represented his own personal interest; and Clark, the president, represented the bank. In this particular transaction Dickinson occupied the position of any other customer, and not that of an officer or agent of the bank; and it must follow from the principles of law before stated that the bank is not chargeable with his knowledge of uncommunicated facts affecting his title to the note. But it is said Dickinson fixed and figured out the discount, and hence he did in point of fact represent the bank. The note bore interest at the rate of eight per cent. per annum from date; and it appears

Dickinson calculated interest at that rate from the eleventh of July, the date of the transaction, to the twenty-seventh of that month, the date of the note, and deducted as discount $10.30; but it does not appear who designated the amount of discount to be paid. The broad fact remains that the president of the bank agreed to take the note, and that the bank accepted the discount as figured up by Dickinson; and the fact, if such it was, that he may have designated the rate of discount in the first instance is wholly immaterial. He nevertheless represented his own interest in the entire transaction. The judgment is affirmed. All concur.