JEFFERSON G. NEWMAN, Respondent, *v.* ZADOK HOOK, Appellant.

1. *Execution—Levy—Sale.*—To pass title to personal property by a levy and sale under execution, the sheriff must actually seize the property so as to deliver the possession.
2. *Estoppel in pais.*—To constitute en estoppel *in pais*, there must be an admission inconsistent with the claim set up; an action by the other party upon such admission, and an injury resulting to him by allowing such admission, to be disproved.

Newman v. Hook.

*Appeal from Callaway Circuit Court.*

*H. C. Hayden*, for appellant.

I. Both plaintiff and defendant claim title through Alfred J. Moore. The time of the sheriff's sale of the hotel is admitted. The principle that a sheriff cannot sell personal property without a seizure and taking it into possession is too well settled to admit of doubt. (Yeddell v. Barnes, 15 Mo. 443; 2 Bac. Abr. 734; 9 East. 474; R. C. 1855, p. 753, § 74; Carpenter v. Stillwell, 1 Kern. 73.)

II. It being beyond contest that the sheriff's acts passed no title, we next inquire, did A. J. Moore enter into any contract, express or implied, whereby he agreed to convey his title to this property to Newman, or any one else, either with or without a consideration moving to himself or to any one else? in other words, is there anything in the evidence which showed that he, Alfred J. Moore, transferred his right to the property? Was Moore's title the subject of a sale by anybody at any time? Did William T. Moore and B. L. Locke act as the agents of Alfred J. Moore and sell the property to Newman as the agents of Alfred J. Moore, and did Moore as the principal assent to the sale, and as principal ratify the sale to Newman? If W. T. Moore and B. L. Locke did not act as the agents of Alfred J. Moore, did not propose to sell his title, then there was nothing for Alfred J. Moore to ratify, to assent to, or to recognize. The truth is that they acted as principals in their own right, and did not assume to act in the capacity of agents for Alfred J. Moore; and the principle of the law of agency, of a ratification or subsequent recognition or assent given to acts done on behalf of another, cannot be invoked. The rule is clear, that ratification is only possible when the act done is done in the name of another, and when there has been an actual or intended agency. (Ferry v. Taylor, 33 Mo. 334: Sto. Ag. 258, a.; Pittsburg R.R. Co. v. Gazzam, 32 Penn. 347; Debolle v. Penn. Ins. Co., 4 Whar. 68; 2 Amer. Lea. Cas. 572; Chit. Cont. 212–13; 3 Tenn. 412; 5 B. & C. 909; 10 B. & C.

298; 5 Metc. 192; 1 Pars. Cont. 47, *w. & y.*; 6 Manning & Gr. 239, *a.*; Year Book, 7 Hen. 4, f. 35.) The court erred, therefore, in putting the case upon the assumption of an agency when there was no evidence whatever showing that W. T. Moore and Locke were acting or assuming to act as such for Alfred J. Moore. The court erred also in assuming by its instruction that Alfred J. Moore, at the time of sale, assented to this sale, of which there was no evidence.

III. The remaining and only way possible by which Alfred J. Moore could have been divested of title is by what is denominated equitable estoppel, by reason of his, A. J. Moore's, acts subsequent to the sale. Estoppels are odious in law. (1 Serg. & R. 444.) They are not admitted in equity against the truth. (Bouv. Law Dic., tit. Estoppel; Pickard v. Sears, 6 Adol. & Ell. 475.) Ld. Denman says, " the rule of law is clear that where one by his word or acts or conduct causes another to believe in a certain state of facts, and induces him to act on that belief so as to alter his own previous position, the former is precluded from averring against the latter a different state of facts." (Gregg v. Wells, 2 Perry & Dav. 296, 433; 10 Ad. & Ell. 90, 439; Stroud v. Stroud, 7 Man. & Gr. 417; Cox v. Canning, 4 M. & C. 453; 7 Mees. & W. 574; 2 Queen's B. 281, 256; 10 id. 486; 2 Excheq. 654; 2 Smith's Lea. Cas. 545, conclusion of English note; Stephen v. Bond, 9 Cow. 274; Dewey v. Field, 4 Metc. 384; 9 Wend. 147; Pickard v. Sears, 6 Ad. & Ell. 469; 19 id. 90; Bushnell v. Church, 15 Conn. 419; 17 Conn. 346; 20 Conn. 18; Hicks v. Cram, 17 Vt. 449; 1 Shepley, 130; 3 Harr. 90; Dazelle v. Odelle, 3 Hill, 219; Taylor et al. v. Zepp, 14 Mo. 488, which is approved in Vallé v. Clemens, 18 Mo. 492. See also 12 Mo. 333; 16 Mo. 114.) In the case of Taylor et al. v. Zepp, this court also admit that the doctrine of estoppel does not apply where the party doing the act, or making the admission, acted under a mistaken impression of his rights. (Whittaker v. Williams, 20 Conn. 98, 568; Steele v. Putney, 3 Shepl.; 1 Sto. Eq. §§ 385–6; Miller v. Shackelford, 4 Dana, 279; Lewis v. San Antonio, 7 Tex. 288.)

In order to constitute an estoppel, the influence of the acts or admissions of the party must be shown to have been an immediate and direct influence. (Watkins v. Rick, 13 N. H.; Reynolds v. Louisburg, 6 Hill, 534; Casey v. Jules, 1 Gill. 430; Wallace v. Truesdale, 6 Pick. 457; Whitney v. Holmes, 15 Mass. 162; Miller v. Cresson, 5 Watts & S. 284; 9 Wend. 482; Truescott v. Davis, 4 Barb. 495; 2 Smith's Lea. Cas. 562–3; 26 Vt. 366; 24 Ala. 381; 21 Ala. 424; 2 Ohio, N. S. 551; 14 Ark. 505; Copeland v. Copeland, 21 Me. [15 Shepl.] 527; West v. Sillman, 7 Wend. 163; 10 Barb. 327; 17 Conn. 345, 355.) A mere conclusion of law does not estop. (Brewster v. Striker, 2 Coms. 19; Hunley v. Hunley, 15 Ala. 91; Carpenter v. Stillwell, 1 Ker. 73; 9 Barb. 615; 10 Barb. 98; 19 Wend. 557; 5 Den. 154; Martin v. Martin, 7 Barb. 407, 644; 8 Barb. 102.

*E. B. Ewing*, *Hockaday* and *Belch*, for respondent.

It is not necessary that the sheriff should be in the absolute possession of the property levied upon; the seizure is complete as soon as the goods are within the power of the officer. The officer may confide to defendant the care and custody of the property seized. (3 Rawl. 401; 16 Johns. 287, 401; 10 Johns. 287.)

It is immaterial whether the sheriff's sale divested A. J. Moore of all his property in the furniture, &c., or not; if by his act or word he induced Newman to make the purchase from William T. Moore and Benjamin L. Locke, or subsequently to said sale delivered the property to Newman in consideration of said sale, he is thereby estopped from setting up any title as against that of Newman.

LOVELACE, Judge, delivered the opinion of the court.

This action is founded upon an interpleader filed by the plaintiff Newman in a suit of attachment commenced by Hook against one A. J. Moore in the Callaway Circuit Court. The interplea claims certain personal property levied on in the attachment suit as the property of Moore. The evidence

shows that in 1860 the sheriff of Callaway county, by virtue of divers executions against Moore, levied upon certain real estate and personal property, including the property in controversy, and sold the same. The property in question consists of certain hotel furniture then belonging to Moore, and used in a certain hotel in the town of Fulton known as the "Moore Hotel." The sheriff in his evidence says that he levied upon the "Moore Hotel" and the furniture; that he never took the furniture into possession, nor did he have it at the place of sale; that he sold the hotel and furniture at the courthouse over in the town of Fulton, and that Wm. T. Moore and one Locke became the purchasers; that he had not the property in possession at the time of the sale, nor did he deliver the possession to the purchasers either at that time or afterwards. The evidence does not show whether the property was sold along with the hotel, or whether it was sold separately, but the same parties became purchasers of all.

W. T. Moore and Locke afterwards sold the hotel and furniture to Newman the plaintiff and A. J. Moore, who up to that time it seems had been living in the hotel, pointed out the furniture, and when he moved away left this furniture at the hotel. This was substantially the evidence.

Several instructions were given and refused on both sides, and the case was submitted to the jury, who found for the plaintiff, and judgment entered up accordingly; to reverse which the case is brought here by appeal.

It will be unnecessary to notice any of the instructions given or refused on either side. There are but two questions presented by the record. First, did the sheriff's sale pass the title to the hotel furniture to Wm. T. Moore and Locke? and, secondly, if any title was left in A. J. Moore after the sheriff's sale, are those claiming under him estopped from setting up that title by virtue of the acts of A. J. Moore in pointing out this property to the plaintiff, or otherwise recognizing the validity of the sheriff's sale?

In order that a sheriff may pass title to personal property

by virtue of an execution sale, there ought. to be a levy, a sale, and a delivery of the property; and to constitute a levy under our statute, there must be an actual seizing of the property. Under the title "Executions," R. C. 1855, § 74, it is provided that the word "levy," as used in this act, shall be construed to mean the actual seizure of the property by the officer charged with the execution of the writ; and this court in the case of Yeldell et al. v. Stemmens, 15 Mo. 443, held that a sheriff must actually seize the property on a *fieri facias* before he can sell; and that seems to be the plain and unequivocal meaning of the statute. The evidence in this case fails to show that the sheriff was ever at the house where the property was, or that he ever saw it, or that he pretended in any way to have it under his control. It was not present when it was sold, nor did he attempt to give possession to the purchaser. It does not appear to have been sold separately from the hotel building. It was all sold at the same time and place, and to the same parties. It would be dangerous in the extreme to permit sheriffs to pass the title to personal property upon such sales as this appears to have been. The property of debtors would be sold at a ruinous sacrifice and their debts left unpaid. Purchasers would not bid freely on property that they had no opportunity of examining, and especially when the sheriff was unable to deliver possession, to obtain which might result in a law suit that would cost the worth of the property. We think it very clear that W. T. Moore and Locke acquired no title to the personal property in question by reason of the sheriff's sale. On this point, however, there was no error, for the second instruction asked by the defendant, and given by the court, correctly stated the law.

In the second place, we will examine and see whether those claiming under A. J. Moore are estopped from asserting his title by virtue of the declarations and acts of Moore. There is doubt but a party may be estopped from setting up his title to personal property when he has permitted a third person to deal with it as his own, and has encouraged strang-

ers to believe that that third person was the owner, and these strangers acting upon this encouragement have acquired rights in the property ; then the real owner will be estopped from asserting his right against such persons as have acquired a title or an interest by reason of his encouragement, for the simple reason that it would be a fraud to permit him to assert his claim against a party who had been induced by his admissions or acts to acquire an interest in the property which he would not otherwise have done. In Darrell v. Odell (3 Hill, 219) it is laid down as the rule in cases of estoppel *in pais* that there must be, first, an admission inconsistent with the evidence proposed to be given or the claim offered to be set up ; second, an action by the other party upon such admission ; third, an injury to him by allowing the admission to be disproved. This rule was adopted by this court in the case of Taylor et al. v. Zepp, 14 Mo. 482. In the case at bar, the plaintiff, without consulting A. J. Moore, or, so far as the evidence shows, even having any conversation with him at all, purchased the hotel and furniture from W. T. Moore and Locke ; and after the purchase was perfect, so far as the evidence shows, he went to the hotel, where A. J. Moore was then residing, and Moore pointed out the hotel furniture. The question is whether this estops Moore or his creditors from asserting Moore's claim to the property. This branch of the case is purely equitable, and the issue ought to have been fairly stated to the jury. The court below, in the first instruction offered, and its own motion, tells the jury that it was necessary for Moore to consent to the sale from W. T. Moore and Locke, or recognize the same. Now, there may be a vast deal of difference between consenting to a sale before it is made or while it is being made, and recognizing the fact of the sale after it is made. If A. J. Moore had been present when the sale was made, consenting to it, and thereby disclaiming title himself and inducing the plaintiff to purchase, there would be strong reasons in the absence of fraud for estopping his creditors from setting up his title. But the mere fact that he simply acquiesces in the sale made by a stranger of his property

ought not to conclude him from setting up his title afterwards, unless he had full knowledge of his title at the time he yielded the possession. The doctrine of estoppels prevents parties from proving the truth, because they have before that either said or acted falsehoods and third persons have acquired rights upon the faith of those falsehoods being true, and their rights cannot be destroyed by disproving these former statements. Now, what former statements did Moore make to mislead this plaintiff in his purchase?—that question, at least, ought to have been submitted to the jury. If Moore had made any former admission with regard to his title calculated to mislead the plaintiff, and that did mislead the plaintiff in his purchase by inducing him to believe that Moore had no title, then Moore's creditors are estopped, and that is the very issue the jury ought to have found. But this question was not submitted to the jury, or, at least, not properly submitted; for the instruction given by the court, and before alluded to, was calculated to induce the jury to believe that the sale would be just as binding if recognized by Moore after it was made as it would be if induced by him.

The cause is reversed and remanded for further trial; the other judges concur.